## Gibson's Administrator v. Louisville & Nashville Railroad Company.

(Decided June 8, 1916.)

### Appeal from Bell Circuit Court.

Death—Action for Damages—Evidence—Peremptory Instruction.— In an action for damages for the death of an employe of a coal company, alleged to have been caused by the negligence of a railroad company in moving the car on which he was standing with unusual and unnecessary violence, evidence considered, and held insufficient to show that the decedent's presence on the car should have been anticipated by the train crew, and there being no evidence tending to show that they knew of his presence on the car, a peremptory instruction in favor of the railroad was properly given.

C. I. DAWSON and JOHN HOWARD for appellant.

BENJAMIN D. WARFIELD and CHAS. W. METCALFE for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Affirming.

The administrator of George Gibson, deceased, brought this suit against the Louisville & Nashville Railroad Company to recover damages for his death. The trial court gave a peremptory instruction in favor of the defendant. Plaintiff appeals.

The facts are as follows: The Stony Fork Coal Company owns a coal mine which is located on a branch line of the defendant's road in Bell county. To facilitate the loading of the coal in the railroad cars the coal company constructed and was maintaining a private switch, consisting of two tracks, leading from the railroad company's branch road up to and beyond the tipple from

which the coal was loaded. The tracks were built on a grade; and the railroad company would place empty cars above the tipple, and as the cars were ready to be loaded they were dropped down under the tipple by the employes of the coal company. After the cars were loaded they were hauled out by the railroad company. The decedent was employed by the coal company as a car trimmer. It was the duty of a car trimmer to pick the impurities from the coal on the loaded cars, and there is also evidence to the effect that the car trimmers handled the cars while at the tipple and used the brakes for that purpose. One of the witnesses also says that the car trimmers would be on the cars picking slate when the railroad engine would come up after the cars. Another witness says that the cars were in charge of the car trimmers up to the time that the engine came for them. On the day of the accident, the decedent, in attempting to drop one of the cars beneath the tipple, let it run down too far, thus making it impossible to load any portion of it, except the upper end. After unsuccessful efforts by the decedent and others to get the car back in proper position, the car was dropped down a few feet below the tipple in order to permit another car from above to be brought down and loaded. In the meantime the railroad engine and crew had done their work and departed. The mine superintendent then telephoned the crew to return with the engine for the purpose of pushing the lower car back in position. When the train crew arrived they stopped the train for the purpose of removing a rope which was stretched across the track. At that time the decedent was working on the upper car under the tipple. The mine superintendent then called to the decedent to come to the side of the car and told him to get off the car as they were going to move the cars back. This fact is clearly established by both the superintendent and J. F. Evans, a witness for plaintiff. The decedent did get off the car at its lower end and then went back to the upper end of the car and was holding on to the brake in some way. Just then the engine, with four or five cars in front, pushed up to the lower car, and as they moved forward the lower car struck the car on which decedent was standing and knocked it forward. The switch was unlocked; and the forward wheels of the car went off the track.

In some way the decedent was thrown to the ground and received a rupture of the bowels, from which he died. Some four or five minutes after the accident the superintendent and Evans went to the decedent. Evans says that the superintendent asked decedent what he got on the car for. The decedent said: "I understood you to tell me to get up there and take the brake off." This conversation is denied by the superintendent. There was further evidence tending to show that the cars being propelled by the railroad engine struck the lower car with unusual violence, and it in turn gave the car on which decedent was standing an unnecessary and un-usual jar.

It is the contention of plaintiff that the facts are sufficient to show that decedent's presence on the car should have been anticipated by the train crew, and that the company, therefore, owed him the duty of exercising ordinary care to handle the cars in a prudent manner. In this connection, it is also insisted that, although the superintendent and Evans testify unequivocally to the fact that the decedent was ordered to get down and stay off the car, decedent's remark to the superintendent, which was a part of the *res gestae*, presented a conflict in the evidence, and was sufficient to raise an issue to be determined by the jury. The difficulty with plaintiff's case is, that while there is evidence tending to show that it was the duty of a car trimmer to be on and about the cars when the railroad crew approached, there is no evidence tending to show that his duties required him to be on the car in question while the railroad was engaged in placing cars in proper position. On the contrary, the evidence not only shows that he had no duty to perform in connection with the cars that were being moved, but that he was ordered to get down off the car in question and in obedience to this order did get down. When he got down off the car the train crew had the right to presume that he would stay down. Under these circumstances, they were not required to anticipate his presence on the car, or to be on the lookout to see whether or not he would get on the car. That being true, the company cannot be held liable for decedent's death, unless the train crew were guilty of negligence in moving the cars after they knew that decedent had again gotten upon the car from which he fell. There being no direct evidence tending to show that the train crew

knew of decedent's presence on the car, or facts from which such knowledge could be reasonably inferred, it follows that the peremptory instruction was properly given.

Judgment affirmed.